# Kane *v.* Philadelphia Rapid Transit Co.

*Practice, C. P.—Trials—Cross-examination—Irrelevant evidence —Similar but unconnected facts.*

1. While the range of cross-examination is left largely to the discretion of the trial judge, and liberality is the rule, yet, matters clearly irrelevant and likely to prove prejudicial to the other side should not be permitted to be introduced on such an examination, particularly where nothing appears to indicate any purpose on the part of the witness to be other than straightforward and honest in his testimony, and where this rule has been violated, it will be reviewed on appeal and when a probability of prejudice is apparent, a new trial will be granted.

2. Where in an action for injuries resulting from a collision between a street car and plaintiff's wagon, the negligence charged was the improper operation of, and not defects in, the car, it is reversible error to permit the motorman, a witness for defendant, to be cross-examined as to other accidents which had previously happened to the conductor, and as to the fact that another man had been killed by the car, and in relation to defects therein not alleged to have contributed to the accident, and in admitting testimony in rebuttal to contradict such witness as to immaterial matters.

Argued Jan. 6, 1915. Appeal, No. 154, Jan. T., 1914, by defendant, from judgment of C. P. No. 1, Philadelphia Co., Sept. T., 1913, No. 2940, on verdict for plaintiff in case of John Kane v. Philadelphia Rapid Transit Company. Before BROWN, C. J., POTTER, ELKIN, STEWART, MOSCHZISKER and FRAZER, JJ. Reversed.

Trespass to recover damages for personal injuries. Before PATTERSON, J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff for $15,000 and judgment thereon. Defendant appealed.

*Errors assigned,* among others, were rulings on evidence.

*Sydney Young,* for appellant.

*Walter T. Fahy* and *Thomas A. Fahy,* for appellee.

OPINION BY MR. JUSTICE MOSCHZISKER, February 15, 1915:

This was an action to recover damages for personal injuries; judgment was entered upon a verdict for the plaintiff and the defendant has appealed. The appellant complains of several rulings on the evidence and of a refusal to withdraw a juror and continue the case.

The accident is thus described in the appellee's paper book: "About 6.20 p. m., on October 20, 1913, plaintiff was driving a two-horse team eastward on Gray's avenue; seeing a car approaching about four hundred feet away, he endeavored to leave the track; before he could clear the track the car collided with the wagon, knocking plaintiff under it, and causing him to sustain a fracture of the spine." The negligence alleged in the statement of claim was the running of the car "at a high and dangerous rate of speed," resulting in a collision with the plaintiff's wagon before he had "sufficient time to fully clear the track." In submitting the case to the jury the trial judge stated, "The negligence complained of by the plaintiff is that the motorman did not operate the car in such a manner as a man of ordinary care would operate a car under the circumstances." We find no averment in the pleadings of any defects in the car, and there was nothing said in the plaintiff's requests for charge handed to the court below, or in his paper book here, tending to show that he depended upon such an allegation to make out his case; with this fact in mind,

we shall proceed to examine the assignments of error which complain of the rulings on the evidence.

When the motorman was on the stand as a witness for the defendant, he gave the following account of the accident: "Approaching the curve at Gibson's avenue and Gray's avenue, I turned my power down to take that curve; I went around the curve, I guess, about four miles an hour—something like that—and after I passed the curve I proceeded to feed my power up. I hadn't quite got all the power on when I noticed a wagon pulling (diagonally into the track) in front of me. I guess I was no more than 12 foot away when I turned my power off, put the air on and turned the reverse and stepped back in the car. 'I got back about as far as the first seat when the crash came." Previous to the testimony just recited, and without anything having been stated upon the subject of the condition of the car, the motorman was asked this question, "What was the condition of the car before this occurrence?" and he answered, "In perfect condition"; but after his account of the accident, he said the car was in "pretty good condition" before the occurrence, adding that the collision damaged its right front vestibule. This is all the testimony given by the motorman in direct examination on the subject of the accident, the speed of the car or its condition. On cross-examination, under objection and exception, the witness was asked whether he had not had a conversation, more than five months after the date of the accident, with a man named by counsel for the plaintiff, wherein he had stated that the car was going at least 22 miles an hour when the wagon was struck, to which he replied that he recalled the conversation in question, but that he did not remember having said the car was going at least 22 miles an hour. He was then asked whether he had not stated in this conversation that the arc light on his car was out and had been so for a square or two before the accident, and answered, "Yes, I said that," adding that he had turned the light out to

prevent it flashing in the eyes of motormen on cars coming from the opposite direction. Upon being asked if he did not say the car was out of order, he replied, "I said I was going to turn the car in on account of a bad hood switch"; but he explained that this had no detrimental effect upon the brake, the reverse, or the air, and that it did not "injure the equipment any so far as stopping the car is concerned" (We have been referred to no contradiction of this latter testimony, nor to anything indicating a controversy on the point). After this he was asked if he had not said the car was a "Jonah," to which he made answer, "No." Counsel then inquired whether he had not stated that the car had killed another person three or four weeks before the injury to the plaintiff and that this was the third serious accident it had been in, to which the witness replied that he had said the car had killed a man about two or three months before the accident; following this, the question was put, "Didn't you further say the conductor of the car was in another accident but he had another motorman," and to this he replied that he had said the conductor had had another accident.

The appellant's complaint is that most of the foregoing cross-examination was for the purpose of eliciting, and did in fact bring out, irrelevant matter, which must have proved prejudicial to the defendant company. While the range of cross-examination is left largely to the discretion of the trial judge, and liberality is the rule, yet, matters clearly irrelevant and likely to prove prejudicial to the other side should not be permitted to be introduced on such an examination, particularly where nothing appears to indicate any purpose on the part of the witness to be other than straightforward and honest in his testimony. It was perfectly proper to cross-examine the motorman on the speed of the car and on all that occurred at the time of, or might have led to, the accident, including the condition of the car, so far as that might have been a contributing cause of the acci-

dent; but it·was not proper to permit cross-examination as to other accidents which had previously happened to the conductor of this car, or concerning the fact that the car had at one time killed another man, or in relation to defects therein which were not charged as contributing to the accident under investigation. When there has been such a violation of the rules governing cross-examination as here presented, it will be reviewed on appeal and, when a probability of prejudice to the appellant is apparent, a new trial will be granted (Lesley v. Ewing, 244 Pa. 480).

The appellant further complains of certain testimony introduced by the plaintiff in rebuttal. Notwithstanding the fact that the motorman frankly admitted he had made most of the statements concerning which he was interrogated on cross-examination, yet, under objection and exception, the plaintiff was permitted to call the man with whom the motorman had talked, more than five months after the accident, and in answer to the general question, "What did you say to him, and what did he say to you," this witness was permitted to state, "He said the hood switch on that car was out of order, and he had intended to turn the car in at the end of that run; and he also stated the arc light was out, that he turned the arc light out prior to striking Gibson's lane and Gray's avenue; and he also stated that the car was a 'Jonah'— that it had been in three serious accidents with the same conductor, but another motorman—a few months prior it had killed a person, and a few months previous there was another killing with the same car. He dubbed the car a 'Jonah.'" All that is relevant and material in this testimony was stated by the motorman on his examination-in-chief or admitted on his cross-examination. Although he may have said the car was a "Jonah," that it had been in other serious accidents with the same conductor (but with a motorman other· than the witness), and that it had killed other persons, all of these facts were entirely irrelevant to the issues on trial, and in all

probability they proved prejudicial to the defendant; under the facts and circumstances of the case before us, they were not proper subjects of cross-examination, and, furthermore, the rebuttal testimony in relation thereto should not have been permitted.

The assignments of error, covering the cross-examination of the motorman and the rebuttal testimony just recited, are sustained to the extent indicated; since, however, the matters we have already passed upon call for a new trial, and since the occurrences referred to in the other assignments are not likely to happen again, it is unnecessary, and would serve no useful purpose in connection with this case, to discuss the rulings in relation thereto.

The judgment is reversed with a venire facias de novo.